JULIA M. C. LAWRENCE, Appellant, *v.* CHARLES C. LITTLE-FIELD, as Administrator with the Will Annexed of the Estate of MARY G. PINKNEY, Deceased, et al., Defendants, and LOUIS H. MORRIS et al., Respondents.

Will — trust of unproductive real estate with imperative power of sale — when proceeds should be apportioned between income payable from time of testator's death to life beneficiary and principal belonging to remaindermen — when income commences where a conversion of property is required to form trust fund — rate of interest in computing income — whether Supreme Court will entertain jurisdiction of an action where relief might be obtained in Surrogate's Court discretionary.

1. Under a will creating a trust of unproductive real estate, income payable to a life beneficiary and remainder to others, with an imperative power of sale and equitable conversion of the real estate into personalty at the death of the testator, with actual sale and conversion accruing only after a considerable delay, the testator will be held to have intended that the proceeds thus and when realized should be apportioned between income payable from the time of her death to the life beneficiary and principal belonging to the remaindermen. Authorities bearing upon the principle involved collated, discussed and followed.

2. A clause of the will whereby after giving a power of sale to the executors, it was provided "that they apply such portions of the proceeds (of sales) as in their judgment they may deem proper to the payment of any taxes and assessments that may be liens upon said real estate or any part thereof and to pay over the surplus that may not be required in their judgment for the above purpose to the said * * * (plaintiff and the three other beneficiaries named with her) in the proportions mentioned in the eighth and ninth clauses of this my will, the whole of such part or share as may then fall to the said (plaintiff) to be held in trust by my executors as

36

hereinbefore provided," construed, and *held*, that a contention that thereunder there was a power to sell only for payment of taxes which would give plaintiff an interest only in any surplus that might happen to be produced in that manner, cannot be sustained where there has been a prior adjudication that there was an imperative power of sale which worked an equitable conversion of all the residuary property at the date of testatrix's decease; that the provision in question was intended to give the power to sell land, pending the general conversion, for the purpose of raising money with which to pay taxes on *all* the property as well as those resting on the *particular piece* which was sold. The fact that the power of sale was imperative did not deprive the trustees or executors of some discretion as to time and manner of sale or insure against delay in conversion during which taxes would accumulate.

3. Nor does the assumption that the real property devised to trustees was to be sold by them acting as executors and the proceeds paid to them in the former capacity by themselves acting in the latter capacity establish the proposition for the purposes of this action that until such surplus was obtained by the execution of the power there could be no income to which plaintiff would be entitled. The property was devised to the trustees for the purposes of the trust. The provision for converting it into personalty was imperative, and the fact that there was no actual income to be enjoyed by plaintiff until the proceeds of the sale were received by the trustees is the very basis for applying the rule in such a case and giving to the life tenant a sum as income during the period when she would have actually received income if the assumed intentions of the testatrix had prevailed.

4. The ordinary rule is that where a conversion of property is required to form the trust fund income will not commence until one year after the decease unless the conversion has actually been accomplished sooner, but where there has been a prior adjudication that the will "worked and effected at the time of her (testatrix's) death an equitable conversion into personal property of all of the real property," the doctrine of equitable conversion will be followed out for all purposes of the will, and the intervening period for which income is to be apportioned be deemed to commence at the date of testator's decease.

5. The income should not be figured at a greater rate than could have been realized by the trustees on a proper investment of funds if they were actually in existence, and in apportioning the income it will be the duty of the trial court to determine at what rate of interest this income should be computed.

6. While the Supreme Court, under ordinary circumstances, will refuse to entertain jurisdiction of an action seeking relief which can be fully administered in the Surrogate's Court, the question whether it will thus refuse to entertain jurisdiction is one which largely rests in its discretion, and, therefore, should be addressed to it, certainly in the first instance.

*Lawrence* v. *Littlefield*, 166 App. Div. 664, reversed.

(Submitted June 2, 1915; decided July 13, 1915.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 12, 1915, which reversed an order of Special Term overruling a demurrer to the complaint and sustained such demurrer.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick H. Sanborn, Henry Wollman* and *Edward S. Seidman* for appellant. Where the will, as here, works an equitable conversion, the beneficiary will take in the same manner as though the conversion had been effected at the time of the death of the testator. (*Kane* v. *Gott*, 24 Wend. 641; *Fisher* v. *Banta*, 66 N. Y. 468; *Lent* v. *Howard*, 89 N. Y. 169; *Matter of Tailer*, 147 App. Div. 741.) The proceeds of the delayed sales include income payable to the life tenant as well as principal to be held for the remaindermen. (*Matter of Tuttle*, 24 Atl. Rep. 1; *Sitwell* v. *Barnard*, 6 Ves. 520; *Gibson* v. *Bott*, 7 Ves. 89; *Kilvington* v. *Gray*, 2 Sim. & Stu. 396; *Taylor* v. *Clark*, 1 Hare, 161; *Wilkinson* v. *Duncan*, 23 Beav. 469; *Yates* v. *Yates*, 28 Beav. 637; *Cox* v. *Cox*, L. R. [8 Eq. Cas.] 343; *In re Tinkler's Estate*, L. R. [20 Eq. Cas.] 456; *Matter of Moore*, 54 L. J. Ch. 432; *Searle* v. *Baker*, L. R. [2 Ch. Div. 1900] 829; *Matter of Atkinson*, L. R. [2 Ch. C. A. 1904] 160.) It was the intention of Miss Pinkney that the enjoyment by plaintiff of her entire legacy under the will should not be postponed. (*Taylor* v. *Clarke*, 1 Hare, 161; *Matter of Martens*, 16

Misc. Rep. 245; *Edwards* v. *Edwards*, 183 Mass. 581; *Williamson* v. *Williamson*, 6 Paige, 298; *Victor* v. *Harwood*, 42 Sim. 172; *Noel* v. *Hinley*, 7 Price, 241.) Mr. Justice HOTCHKISS' conclusion as to the effect of the provisions in the will regarding payment of taxes, is untenable. (*Delehanty* v. *St. Vincent's O. Asylum*, 56 Hun, 55; 134 N. Y. 612; *Lamb* v. *Lamb*, 11 Pick. 371; *Chamberlin* v. *Gleason*, 163 N. Y. 214; *Matter of Martens*, 16 Misc. Rep. 245.) The Supreme Court had jurisdiction of this case and properly retained it. (*Ungrich* v. *Ball*, 152 App. Div. 824; *Wager* v. *Wager*, 89 N. Y. 161; *Mildeberger* v. *Franklin*, 130 App. Div. 860; *Pyle* v. *Pyle*, 137 App. Div. 568; *Matter of Farrell*, 125 App. Div. 702; *Bryan* v. *Cooper*, 72 N. Y. 317.)

*Henry A. Foster* for Louis H. Morris, respondent. Since the Revised Statutes of 1827-1828 it has not been and it is not law or equity of New York that if part of an unsold land poor residuary trust, consisting of realty which cannot be sold notwithstanding an imperative power of sale, fails to produce any income, the life beneficiary of the income of the residuary estate thereby becomes entitled to legal interest on the unsold portion, payable out of the corpus of the residue, in derogation of the remaindermen's rights. (*Kingsland* v. *Murray*, 133 N.Y. 170; *Potter* v. *Gardner*, 12 Wheat. 499; *Patterson* v. *Vivian*, 137 App. Div. 596; *Matter of Osborne*, 209 N. Y. 451; *Gibbons* v. *Mahon*, 136 U. S. 549; *Matter of Harteau*, 204 N. Y. 293; *Thayer* v. *Burr*, 201 N. Y.155; *Chester* v. *Buffalo Car Mfg. Co.*, 70 App. Div. 444; *Matter of Rogers*, 161 N. Y. 108; *Cuthbert* v. *Chauvet*, 136 N. Y. 326; *Genet* v. *Hunt*, 113 N. Y. 158; *Lent* v. *Howard*, 89 N. Y. 170; *Douglas* v. *Cruger*, 80 N. Y. 15; *Matter of Kirby*, 113 App. Div. 711.)

*Abram I. Elkus, Charles P. Northrop* and *Wesley S. Sawyer* for Keith W. Morris et al., respondents.

The complaint does not state a cause of action. (*Patterson* v. *Vivian*, 63 Misc. Rep. 389; 137 App. Div. 596; *Bank of Niagara* v. *Talbot*, 110 App. Div. 519; 184 N. Y. 576; *Matter of Stanfield*, 135 N. Y. 292; *Matter of Kings County Trust Co.*, 141 App. Div. 43; *Matter of Slocum*, 169 N. Y. 153; *Thorn* v. *Garner*, 113 N. Y. 198; *Bradner* v. *Faulkner*, 12 N. Y. 472; *Matter of Accounting of McGowan*, 124 N. Y. 526; *Matter of O'Hara*, 19 Misc. Rep. 254; *Hite* v. *Hite*, 20 S. W. Rep. 778; *Clifford* v. *Davis*, 22 Ill. App. 316; *Vickers* v. *Scott*, 3 M. & K. 500.)

HISCOCK, J. The complaint, which, under the decision of the Appellate Division, has been successfully attacked by demurrer as not stating a cause of action, alleges, amongst others, the following facts:

Mary G. Pinkney died in 1908. She left her surviving as her only heirs at law and next of kin a nephew, Thomas L. Watt, and two nieces, the defendant Grace Watt Thomas and the plaintiff, formerly Julia Morris. She also left a will which was duly admitted to probate and which, after making certain specific bequests which have been paid or have lapsed, contained the following material provisions:

"*Eighth.* I direct that all the rest and residue of my estate, both real and personal, be divided into four equal parts. * * * I give, devise and bequeath one other equal undivided fourth part of my said estate, both real and personal, to my executors hereinafter named upon the following trust, to invest and reinvest the said one-fourth part and pay over the interest or income thereof during her natural life to Julia Morris * * * and upon her death to distribute the same among the children of said Julia Morris, share and share alike." The remaining three equal parts of said residuary estate were devised and bequeathed respectively to two nephews and to and for the benefit of the defendant Grace Watt Thomas, one-half of the latter one-quarter in trust.

By a following clause, numbered ninth, said testatrix provided that in case either of said four beneficiaries should die before her leaving issue him or her surviving, the share of the one so dying should go to his or her children, share and share alike, and in case either of them should die before her without leaving issue, she did "give, devise and bequeath the share of the one so dying to the surviving brothers and sisters in equal parts or shares — the whole of such part or share as may then fall to the said Julia Morris, to be held in trust by my executors as hereinbefore provided."

By another following clause, numbered tenth, she gave to her executors power and authority to sell either at public or private sale all her real estate or any part thereof upon such terms as in their judgment they should deem proper and to execute proper conveyances thereof and "that they apply such portions of the proceeds as in their judgment they may deem proper to the payment of any taxes and assessments that may be liens upon said real estate or any part thereof, and to pay over the surplus that may not be required in their judgment for the above named purpose to (the other three beneficiaries above named and) the said Julia Morris * * * in the proportions mentioned in the Eighth and Ninth Clauses (above quoted), * * * the whole or such part or share as may then fall to the said Julia Morris to be held in trust by my executors as hereinbefore provided."

Said testatrix left personal property of the value of about $700,000 and real estate of the value of about $8,000,000. Practically all of the personal estate has been exhausted in the payment of expenses and of specific legacies and said real property as a whole has been, and the portion still remaining unsold is, unproductive, producing less income than was and is necessary to pay the carrying charges. From time to time down to October 21, 1912, sales thereof aggregating $2,533,083.33 had been made and there was placed in the trust created

for plaintiff's benefit between January 1, 1912, and June 15, 1912, the sum of $775,000, being part of the proceeds of these sales.

In an action heretofore brought in the Supreme Court for construction of the will and to which all of the present parties or their privies were parties, it was adjudged that the power of sale contained in the will was an imperative one to sell all the real property of the testatrix except that specifically devised and that there was an equitable conversion of all her real property excepting that so specifically devised as of the time of her death.

Notwithstanding the provisions of the will and said judgment all of the amount paid into plaintiff's trust has been administered as principal, and although testatrix treated her in all respects as a daughter and frequently expressed her intention of providing for her in the most liberal manner, the plaintiff received no income under the trust for several years, and then only such as accrued on the proceeds of sales of real estate treated wholly as principal.

On these facts, in connection with others not necessary here to recapitulate, plaintiff demands that proceeds heretofore or hereafter realized from the sale of real estate and belonging to the trust in her favor shall be apportioned between interest going to her and principal going to remaindermen by taking in the case of each sale as of the date of the testatrix's decease such a sum as at six per cent interest with annual rests will produce the amount realized on said sale and that said principal sum so taken shall be treated as principal under the trust going to remaindermen and that the balance of the proceeds shall be regarded as income belonging to her. The difference between what is thus demanded and the method of treating proceeds of sales which thus far has been pursued measures and defines the important issue between the parties.

Stated more definitely and completely, the legal ques-

tion presented by the complaint and demurrer is whether under a will creating a trust of unproductive real estate, income payable to a life beneficiary and remainder to others, with an imperative power of sale and equitable conversion of the real estate into personalty at the death of the testator, with actual sale and conversion accruing only after a considerable delay, the testator will be held to have intended that the proceeds thus and when realized should be apportioned between income payable from the time of his death to the life beneficiary and principal belonging to the remaindermen, or whether he is to be assumed to have intended that the proceeds thus realized should be treated wholly as principal with income payable thereon to the life beneficiary only from the date of actual conversion.

There is no opportunity for controversy in respect of most of the conditions which present and leave open to us in this case the question as thus stated. If it be true that if the questions were undetermined, there might be some discussion as to the nature and extent of the power of sale and as to the equitable conversion of the real estate, it is conceded that the judgment construing the will which has been referred to is a binding adjudication upon the parties to this action. There is a claim, however, that the clause containing a power to sell real estate for payment of taxes which has been quoted has an effect superior to any principles of interpretation which might otherwise be applicable, and imposes upon us a construction of the will adverse to plaintiff's claims. Disposition of this claim will be reserved until after consideration of the will upon its other features.

The basis of plaintiff's contention for an apportionment of proceeds between income for her and principal for the remaindermen is the argument that ordinarily the life tenant is an object of more immediate and greater solicitude to the testator than remaindermen who may not even be in existence during his life, and that it is not to be

assumed that a testator intends that a provision of income for a life beneficiary shall be rendered nugatory by delay, whether willful or otherwise, in the creation of a trust fund which is to produce the income, and that, therefore, there ought to be such an apportionment of proceeds on a conversion when finally realized as will give the life tenant such income as the testator must have intended. Applying this general argument to the concrete facts of this case it is urged that the plaintiff was the favorite niece of testatrix, treated by the latter as a daughter and promised liberal provision; that the remaindermen are more remote relations; that the will imperatively required conversion of the real estate in order to make up the trust fund and worked an equitable conversion as of the date of the testatrix's death; that while it may have been assumed that the trustees or executors would be compelled to exercise discretion as to the time and manner of sale, it ought not to be held by the court that the testatrix intended that the first object of her bounty should be deprived of all benefit under the will to the advantage of the more remote remaindermen during the years that might necessarily be occupied in finding a market for $8,000,000 worth of unproductive real estate; and hence there should be apportionment of proceeds when finally realized.

The question thus presented is one of construction of a will controlled by no statutory provision and to be settled by the authorities. It seems to me that such authorities so settle the question in favor of plaintiff.

In *Gibson* v. *Bott* (7 Vesey [1802], 89) the testator bequeathed to his executors his general residuary estate, including leasehold interests, upon trust, as soon as convenient after his death, to convert into money and invest the same and pay the income to his daughters in certain proportions. The leaseholds could not be sold for some time on account of defects in title.

Lord ELDON held that the proceeds constituted a fund

for the benefit of the life tenants in trust, as well as for the remaindermen and should be apportioned between them. He said (p. 97): "As to the leasehold premises, that could not be sold, they cannot be considered otherwise than as property, which it was for the benefit of all parties to suffer to remain *in specie ;* upon that, I think the plaintiffs may have interest upon the value from the death, for there is a consideration for that. The best decree in this cause will be to declare, that the property to be converted has been converted in a reasonable time; that the persons entitled for life shall have the interest from that conversion; and as to the other leasehold premises, that it being for the interest of all parties, that they should not be sold, a value shall be set upon them; and the persons entitled for life shall have interest at four per cent upon that value from the death of the testator."

In *Kilvington* v. *Gray* (2 Sim. & Stu. 396) it appeared that the testator had directed his residuary estate to be laid out in the purchase of the land as soon as a convenient purchase could be found in the county of York which upon a fair letting would produce a yearly rent equal to three and one-half per cent upon the amount of the purchase money, and in the meantime the interest of his residuary estate to be accumulated. Sir JOHN LEACH, V. C., decided that the will did not give the trustees an indefinite time to convert the personalty and invest the proceeds in realty, as directed by the will, and, therefore, that the life tenant was entitled to interest on the testator's residuary personal estate from the end of one year after the testator's death.

In *Taylor* v. *Clark* (1 Hare [1841], 161; *S. C.,* 66 Eng. Rep. 990) there was a contest between a beneficiary for life and the remaindermen. Among his assets, the testator owned an interest in a partnership in Portugal, which the executors were able to sell only after a lapse of some years. After giving certain specific legacies, the testator by his will gave the residue of his property to his

executors to convert into money and invest in certain securities, and pay the income to his wife for life, and after her death, upon trust for the benefit of certain other persons with remainder over.

The life tenants in trust contended, as the plaintiff at bar does, that when the property was sold, the proceeds of the sale included principal and income and that they were entitled to an apportionment as between themselves and the remaindermen, and the court so held. Vice-Chancellor WIGRAM in deciding the case said (p. 167):

"To the argument of the parties interested in remainder after the plaintiff's death, so far as it denies her right to any income in respect of the property in Portugal, until that property is gotten in and actually invested, I cannot accede. It is true, indeed, that the testator has not, in terms, given the tenant for life any benefit from his residuary bequest, except out of his property when converted into particular investments, and not until the property is so converted; but I cannot consider this alone to be an answer to the plaintiff's claim to have some income out of the property in Portugal, before it is gotten in and invested in the manner which the will directs. * * * The court, in such cases, considers the interest of the legatees as the general and primary object of the testator, and treats his direction to convert and invest the property as a particular and secondary object — a mode, in fact, of carrying the primary object into effect, and nothing more. In many cases it would be impossible to get in the property within a reasonable time. In some, it could only be done at a ruinous loss to the estate. In others, different degrees of diligence used by trustees and executors would materially affect the interests of a legatee for life, and might (as Lord ELDON observed in *Sitwell* v. *Bernard*) equally affect the interest of those in remainder. To obviate these and other inconveniences, and to give effect, as near as may be to the testator's intention, the Court acting upon a general rule (*Gibson* v. *Bott*, 7 Ves.

94; *Walker* v. *Shore,* 19 Ves. 387) feigns the property to be converted, as directed by the testator, at the end of one year from his death, and, at least from that time, gives to the tenant for life the precise income which would be produced if the property were actually so converted, and in its proper state of investment. By doing this the Court gives the tenant for life as large an amount of income as the testator intended, and nothing more."

It was decided that the "property in Portugal must be considered as converted and placed in a proper state of investment at that time," *i. e.,* "a year after the testator's death," and that the life tenant was entitled " to the precise income which would be produced if the property were actually converted, and in its proper state of investment." Income was directed to be paid on a fund based on the appraised value of the property the conversion of which was delayed, and the apportionment was granted irrespective of whether there should eventually actually be a gain or loss by reason of the delay.

In *Wilkinson* v. *Duncan* (23 Beav. [1857] 469) the testator was entitled to one-sixth of about £23,000 in reversion expectant on the deaths of two others. The trustees under the testator's will having a discretion allowed the reversionary interest to remain unsold for nineteen years, when it fell into possession.

ROMILLY, J., in decreeing an apportionment of the fund in favor of the life tenant under said testator's will, said, at page 472: " The trustees delayed to sell the reversion until it had fallen into possession, because they were of opinion, that by so doing, they would, in the end, produce a larger amount to the estate of the testator. They acted properly in so doing, but they ought not thereby to injure one of the legatees of that trust fund for the benefit of others, and it is to be presumed that they in no way intended to do so. The tenant for life has received nothing for interest down to the present time; but if the reversion had been sold he would then have received the interest on

the amount of the purchase money; and if the period when the reversion fell in could have been foreseen, and the reversion could have been sold at a fair price, it ought, with the accumulated interest upon it, to have realized the full amount of the fund as it stands at present. I am of opinion that the tenant for life is entitled to have paid to him, in respect of interest, out of the capital of the fund now realized, the amount which he would have so received."

In *Yates* v. *Yates* (28 Beavan [1866], 637) the testator left certain unimproved real estate to trustees for the benefit of his wife for her life with remainders but with " absolute discretion" to his trustees as to whether they should or should not sell at all. This discretion was so broad that the court said of it " They (the trustees) are not bound to exercise their power and sell at all." The court held that as the trustees were not required to sell at all the case was taken out of the general rule, and even though the property had been wholly unproductive, the life tenant on the sale thereof, could not have an apportionment of the selling price. But the court, at page 639, stated the general rule as follows:

"The principle of the Court, I apprehend to be quite clear. Where a testator gives property to trustees, with an absolute trust for conversion, and with a discretion as to the time at which the conversion shall take place, if, from any causes whatever, arising from the exercise of the discretion and judgment of the trustees, the conversion is delayed, then the tenant for life is not to be prejudiced by that delay, but is to have the same benefit as if the conversion had taken place within a reasonable time from the death of the testator, which is usually fixed at twelve months from that period." (And see *Tucker* v. *Boswell*, 5 Beav. 607; *Kilvington* v. *Gray*, 2 Sim. & Stu. 396. See, also, *Sitwell* v. *Bernard*, 6 Vesey, 520.)

*Sargent* v. *Sargent* (103 Mass. 297) involved a case where the will directed that certain bonds should be sold as soon as possible after the testator's death and the avails

paid over to a trustee in trust, to pay the interest thereof to one who appears to have been a daughter-in-law of the testator, and the principal at her death to grandchildren. There was delay in converting the bonds during which various coupons fell due. It was held that the amount of these coupons was payable as income to the life beneficiary, and it was written: "In the case of a bequest of a residue in trust to be sold as soon as may be and invested in a particular kind of security, and the income paid to one person for life, and then the principal to others, without any direction that such investment shall include intervening income by way of accumulation, it is now, after much variety and conflict of opinion, well settled in England, that the tenant for life is entitled to income from the death of the testator; that the conversion from one form of security to another, if not made sooner, is to be taken as if made at the end of one year from the testator's death; and that the tenant for life is to receive the income computed accordingly from that time, and the income of the actual investment for the first year, if in public funds or such other securities as a trustee might lawfully invest in."

In *Edwards* v. *Edwards* (183 Mass. 581) it appeared that the testator had given his property to trustees, with power "to invest and reinvest the same at their discretion, in such securities as the laws of this Commonwealth allow savings banks to invest their funds in," and then provided that the net income, etc., should be paid to his wife, for life, with remainder over, except that $100 a month should be paid to the testator's son and daughter-in-law for life. The most valuable part of the real estate was unproductive land on Huntington avenue, Boston. This property did not produce sufficient income to pay the taxes and expenses, and was not sold until more than three years after testator's death. The delay in selling was not due to the fault of anybody. The life beneficiary claimed that the fund produced by the sale of the Huntington

avenue real estate should be apportioned. It was held that the fund as actually received by the trustees should be apportioned by ascertaining what sum would have been sufficient if invested by the trustees immediately after the death of the testator, to produce, with the income which they reasonably could have obtained from it, the sum in the hands of the trustees as the net proceeds of the lands on Huntington avenue after deducting their disbursements on account of the property. That sum was to be held as principal, and the remainder was to be paid over as income.

Chief Judge KNOWLTON said (pp. 583, 585): "Under language like that of this will, which gives the trustees all the property, real and personal, and does not indicate an intention that the time for establishing the fund shall be postponed, and which gives to a life tenant the annual income, it is well settled law in this Commonwealth, that the income is to be computed from the time of the testator's death. (Authorities.) In the present case the testator obviously intended that the entire property should be converted into one fund, and that the unproductive and speculative investments which he had at the time of his death should be changed without unreasonable delay. Much of the property held on margins was not of such a kind ' as the laws of this Commonwealth allow savings banks to invest their funds in,' and the land on Huntington avenue was not in a condition to be held as a permanent investment. It was, therefore, the duty of the trustees to convert this property into an income-producing fund, and this they did according to their best judgment and discretion. The testator is presumed to have expected that some time would be required to accomplish this. At the same time, he is presumed to have intended that the rights of the life tenant to income should be ascertained on the creation of the fund, as if the fund had come into existence immediately after his death. This is in accordance with the rule repeatedly stated by

this Court. *Kinmonth* v. *Brigham*, 5 Allen, 270, 278; *Sargent* v. *Sargent*, 103 Mass. 297; *Westcott* v. *Nickerson*, 120 Mass. 410; *Mudge* v. *Parker*, 139 Mass. 153. The rule is applicable as well when the delay in converting the property is necessary as when it is caused by the voluntary act or default of the trustees. *Loring* v. *Massachusetts Horticultural Society*, 171 Mass. 401, 404. * * * We are to deal with the income which could have been obtained by the trustees if the fund had been ready for investment and had been invested immediately after the death of the testator. The failure to invest it then was not the fault of anybody, and we are not called upon to allow interest as interest, but only to ascertain the probable income."

Various attempts are made to distinguish the foregoing case from the one at bar, and of which two will be briefly considered.

It is said that the unimproved real estate involved in said case after a delay of some years was sold at a large advance over its inventory value, and the question before the court related " to an apportionment of the proceeds between the widow and the remainderman," and which was entirely different than the question before us. It may be conceded that if the question under consideration was the one merely how an increment in value of trust property should be divided between life tenant and remainderman the case would not be authority here. It does not appear to me, however, that such was the question being considered, but rather that it was being directly decided whether on the conversion of unproductive property into a trust fund the proceeds should be apportioned between principal and income covering a period when there had been no actual income, and that this question was considered and decided entirely irrespective of the feature that the real property was finally converted at a larger or smaller price than that at which it had been inventoried.

It is also said that the decision in the *Edwards* case is based on a statute which provides, "When an annuity * * * or income * * * of property real or personal is given by will * * * in trust for the benefit of a person for life such person shall be entitled to receive and enjoy the same from and after the decease of the testator unless it is otherwise provided in such will or testament." An examination, however, of the *Edwards* and *Sargent* cases and of the case of *Ayer* v. *Ayer* (128 Mass. 575) discloses that the rule which was being laid down was not based on any statute but was a rule of law with which it was said that the statute above quoted was in harmony.

*Williamson* v. *Williamson* (6 Paige Ch. 298, 304) involved the question as of what date interest should be paid to the widow on a bequest to her of the use of the residuary estate during life or widowhood. The conclusion was reached that in the case of a bequest of a life estate in a residuary fund where no time is prescribed for the commencement of the interest or enjoyment of the use or income the legatee for life is entitled to the interest or income of the clear residue as afterwards ascertained to be computed from the time of the death of the testator. In the discussion of this question the chancellor wrote what seems to be pertinent here. "All the cases which appear to conflict with this rule, * * * will be found to be cases in which the testator had directed one species of property to be converted into another, or the residuary fund to be invested in a particular manner, and had then given a life estate in the fund as thus converted or invested. In such cases it appears to be consistent with the will of the testator to consider the life interest as commencing when the conversion takes place, * * * either within the year or at the expiration of that time. But as a year is considered a reasonable time for the executor to comply with the testator's directions as to the conversion * * *, the legatee for life cannot be kept out of the interest or income beyond that period."

37

*Rodman* v. *Fincke* (68 N. Y. 239, 244, 245) involved the consideration of a case where the will devised certain real estate to trustees to sell and invest the proceeds for the benefit of testator's children with remainder over, and with the further provision that if the proceeds of the real estate should be less than a certain amount such deficit should be made up from the testator's personal estate. After several years the real estate was sold for a sum much less than the amount fixed for the trust fund. Thereupon an action was brought in behalf of the life beneficiaries asking that they be paid out of the residuary estate the balance necessary to make the prescribed amount of the trust fund and interest on such balance for the period intervening the testator's death and the sale of the real estate, and also from said residuary fund an amount as income on the proceeds of the real estate sold during said intervening period. It will thus be noted that one of the prayers was not that the proceeds of the real estate sold should be apportioned between income for life tenants and principal for remaindermen, but that such income should be paid to the life tenant out of an entirely different fund. It was held that there was nothing in the will which authorized this to be done. But it was said: "If the *cestuis que trust* for life have, by the delay in the sale, sustained any loss of interest on the proceeds, that is a matter between them and the trustees or remaindermen," and then Judge RAPALLO writes: "Where a testator gives property to trustees with an absolute trust for conversion, and with a discretion as to the time at which the conversion shall take place, if from any cause whatever, arising from the discretion and judgment of the trustees, the conversion is delayed, then the tenant for life is not to be prejudiced by this delay, but is to have the same benefit as if the conversion had taken place within a reasonable time from the death of the testator, which is usually fixed at twelve months from that period."

Of course what is thus written fits the present case, but again attempt is made to destroy this authority also by various criticisms. It is suggested that what was said was a dictum. I do not so regard it. The claim was being made to certain relief by way of allowance from the residuary estate of income to the life beneficiary on the proceeds of a deferred sale of real estate directed to be converted for the purpose of creating a trust fund. It was in effect held that there might be an apportionment between income and principal of the proceeds of the particular real estate sold, but that that rule did not sustain the claim being then made. That appears to have been a pertinent and appropriate line of discussion for the court.

Next it is said that Judge RAPALLO based his statement of the rule here invoked on the two English cases of *Yates* v. *Yates* (28 Beavan, 637) and *Kilvington* v. *Gray* (2 Sim. & Stu. 396) (already referred to herein), and that the latter case was not applicable and that the former one had been in effect overruled by the later cases of *Searle* v. *Baker* (L. R. [2 Ch. Div. 1900] 829) and *Wilson* v. *Oliver* (L. R. [2 Ch. 1908] 74). I am not able to agree with the view thus taken. I think the *Kilvington* case does sustain what was written in the *Rodman* case and that the *Yates* case cannot be regarded as having been overruled by the *Searle* and *Wilson* cases. It is true that in the *Searle* case Judge KEKEWICH did say that *if* the master of the rolls in the *Yates* case did intend to lay down a certain rule, not at all material in this case or in the *Searle* case, he was wrong, but this observation seems rather too hypothetical and irrelevant to have the effect of overruling the case referred to. The *Wilson* case simply followed the *Searle* case on the point which was really involved and which as already sufficiently indicated was entirely different than the one being discussed by Judge RAPALLO and involved here. Therefore, it seems to me that the *Rodman* case is substantially an authority for the view

urged by appellant. (See, also, as perhaps tending to support her position, *Roosevelt* v. *Roosevelt*, 5 Redf. 264 and 122; *Lawrence* v. *Embree*, 3 Bradf. 364; *Matter of Kendall*, 4 Dem. 133.)

These authorities, which are not overthrown by any of the decisions called to our attention, in my opinion sustain the construction and administration of the will contended for by plaintiff unless the claim in behalf of defendants already referred to that a particular provision has a controlling, contrary effect is well founded and that claim will now be considered.

The clause which was thought by the Appellate Division to have this important effect is the tenth one whereby after giving a power of sale to the executors, it was provided, "that they apply such portions of the proceeds (of sales) as in their judgment they may deem proper to the payment of any taxes and assessments that may be liens upon said real estate or any part thereof and to pay over the surplus that may not be required in their judgment for the above purpose to the said * * * Julia Morris (and the three other beneficiaries named with her) in the proportions mentioned in the eighth and ninth clauses of this my will, the whole of such part or share as may then fall to the said Julia Morris to be held in trust by my executors as hereinbefore provided."

Construing this clause it was reasoned by the Appellate Division that a power of sale was given to the identical persons named in the will in their capacity as executors and not as trustees, and that as executors they were empowered from time to time to sell so much of the property devised to them as trustees as seemed best and after paying taxes and assessments pay over to themselves as trustees any remaining surplus; that the discretion with which the executors were vested permitted them to sell from time to time so much only as might at the utmost be necessary to pay the taxes and assessments on the

whole; that viewed in this light the only right of the trustees was to receive for the plaintiff's account such surplus as might remain after taxes and assessments had been paid, and that until such surplus was paid over there could be no income for plaintiff to enjoy. It was also reasoned that no different result would be reached if the power of sale was construed to be mandatory and immediate, for in that event all the trustees would be entitled to receive was the surplus after payment of taxes, and until such surplus was obtained by the execution of the power there could be no income to which plaintiff would be entitled. Thus as I understand it, two propositions were asserted. The first one that there was a power to sell only for payment of taxes which would give plaintiff an interest only in any surplus that might happen to be produced in that manner; the second one, that even though there was an imperative power of sale it was to be executed by the executors, and plaintiff would not have any right to income until the "surplus" was actually realized and paid over to the trustees. In answer to the first proposition, it seems to me that we are barred from debating whether the general scheme of the will contained in preceding clauses whereby part of the residuary real property was conveyed upon the trust to "invest and reinvest the said  *  *  *  part and pay over the interest or income" to Mrs. Morris, thereby implying a power of sale, was destroyed or cut down to a mere discretionary power to sell for payment of taxes. It has been adjudicated that there was an imperative power of sale which worked an equitable conversion of all the residuary property at the date of testatrix's decease.

In my opinion this tax paying provision upon which so much stress has been laid was intended to give the power to sell land, pending the general conversion, for the purpose of raising money with which to pay taxes on *all* the property as well as those resting on the *particular piece* which was sold. The fact that the power of sale was

imperative did not deprive the trustees or executors of some discretion as to time and manner of sale or insure against delay in conversion during which taxes would accumulate. (*Graham* v. *Livingston*, 7 Hun, 11, 14; *Stagg* v. *Jackson*, 1 N. Y. 206, 212.)

Neither do I think that the assumption that the real property devised to trustees was to be sold by them acting as executors and the proceeds paid to them in the former capacity by themselves acting in the latter capacity establishes the proposition for the purposes of this action that "until such surplus was obtained by the execution of the power there could be no income to which plaintiff would be entitled." Of course, there would be no income actually realized on the principal of the trust fund in the ordinary manner until the proceeds of the sales were received, but that is not the proposition involved here. The property was devised to the trustees for the purposes of the trust. The provision for converting it into personalty was imperative, and the question is shall the proceeds when actually realized be so apportioned as to give the life tenant a sum as income from the time when the property is deemed to have been converted and during the period of deferred actual conversion, and thus carry out the supposed intent of the testatrix. In my opinion this question is not decided by the somewhat illusory consideration that the imperative command of the will was executed by a set of persons acting in one capacity or the other or by the fact that there was no actual income to be enjoyed by plaintiff until the proceeds of the sale were received by the trustees. The latter fact is the very basis for applying the rule in such a case and giving to the life tenant a sum *as* income during the period when he would have actually received income if the assumed intentions of the testatrix had prevailed.

Regarding as settled in favor of the plaintiff the main proposition that the proceeds arising from the sales of real

estate should be in part apportioned to income for the period intervening the testatrix's death and the sale, two minor questions require consideration.

The first one is, shall this intervening period for which income is to be apportioned be deemed to commence at the date of testatrix's decease or one year thereafter. I think the ordinary rule is that where a conversion of property is required to form the trust fund income will not commence until one year after the decease unless the conversion has actually been accomplished sooner. The query arises in this case, however, whether this general rule is affected by the prior adjudication that the will "worked and effected at the time of her (the testatrix's) death an equitable conversion into personal property of all of the real property." I think it is so affected. When the doctrine of equitable conversion is held to be applicable as in the present case operating to change real estate into personalty, it is followed out for all purposes of the will. (*Moncrief* v. *Ross*, 50 N. Y. 431, 436; *Delafield* v. *Barlow*, 107 N. Y. 535, 540; *Graham* v. *Livingston*, 7 Hun, 11, 14; *Stagg* v. *Jackson*, 1 N. Y. 206, 212; *Hood* v. *Hood*, 85 N. Y. 561, 570; *Finley* v. *Bent*, 95 N. Y. 364, 367.) I, therefore, see no reason why the doctrine of a conversion at the time of the testator's death should not be applied in aid of the rule now being invoked as well as for other purposes of the will.

Secondly, plaintiff urges that in applying the rule of apportionment between income and principal, income should be figured at the rate of six per cent. I doubt this. Such income should not be figured at a greater rate than could have been realized by the trustees on a proper investment of funds if they were actually in existence, and in apportioning the income it will be the duty of the trial court to determine at what rate of interest this income should be computed. (*Edwards* v. *Edwards, supra.*)

Lastly, it is urged as a bar to and defect in the cause of action stated in the complaint that adequate relief could be obtained in the Surrogate's Court and that,

therefore, the Supreme Court should not entertain juris-
diction of the action. This argument seems to be made
in this court for the first time and it is one to be addressed
to the Supreme Court. That court under ordinary cir-
cumstances will refuse to entertain jurisdiction of an
action seeking relief which can be fully administered on an
accounting, for instance, in Surrogate's Court. But the
question whether it will thus refuse to entertain jurisdic-
tion is one which largely rests in its discretion, and, there-
fore, should be addressed to it certainly in the first
instance. (*Matter of Smith*, 120 App. Div. 199; *Ander-
son v. Anderson*, 112 N. Y. 104, 109; *Wager v. Wager*,
89 N. Y. 161, 168; *Bankers' Surety Co. v. Meyer*, 205
N. Y. 219, 224.)

In accordance with these views the order of the Appel-
late Division should be reversed and interlocutory judg-
ment of the Special Term affirmed and the question cer-
tified to us answered in the affirmative, with costs to the
appellant in this court and in the Appellate Division.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK,
HOGAN, MILLER and SEABURY, JJ., concur.

Order reversed, etc.