The judgment of conviction should be reversed and a new trial granted.

All concur; McCANN, J., voting for reversal and dismissal of the indictment on the ground that the indictment was improperly found in Montgomery county.

Judgment of conviction reversed on the law and new trial granted.

---

In the Matter of the Application for the Apportionment of Income Due to JULIA WATT LAWRENCE from a Trust Created by the Last Will and Testament of MARY G. PINKNEY, Deceased.

EMERY J. THOMAS, as Administrator, etc., of GRACE WATT THOMAS, Deceased, Appellant; JULIA WATT LAWRENCE and Others, Respondents.

First Department, January 11, 1924.

Trusts — proceeding to apportion proceeds of sales of unproductive real estate — donor, in effect, gave property in trust to pay income from date of her death to beneficiary during life and then to second beneficiary during life with remainders over — first beneficiary died — amount of principal fixed by determining amount which put at interest at death of donor would amount to proceeds of sale at date of receipt — income difference between proceeds and such principal — income then divided between beneficiaries in proportion that time between death of donor and death of first beneficiary bears to time between latter date and receipt of proceeds — res judicata — decision of referee in similar proceeding relating to earlier sales not res judicata — referee did not use either method of apportionment urged by counsel here.

In a proceeding to apportion the proceeds of sales of unproductive real estate, left in trust, where the donor of the trust in a will providing, in effect, that proceeds of sales should be apportioned between income payable from the date of the donor's death and principal belonging to the remaindermen, gave the property in question in trust to pay the income to a beneficiary during her life and upon her death without issue to pay the principal to the trustee of another trust which provided for the payment of the income during the life of the beneficiary

thereunder with remainders over, and the beneficiary of the first trust has died without issue, the proper method of apportionment is to fix the amount of the principal by determining what sum put at interest at the date of the death of the donor would amount to the proceeds of the sale in question at the date of their receipt, subtract the principal thus found from the proceeds to determine the income and then divide the income between the beneficiaries, or their representatives, in the proportion that the time between the death of the donor and the death of the first beneficiary bears to the time between the latter date and the date of the receipt of the proceeds.

The decision of a referee in a similar proceeding had concerning an earlier series of sales is not *res judicata* where it appears that the referee did not use either method of apportionment urged by counsel in this proceeding.

APPEAL by Emery J. Thomas, as administrator, etc., from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 21st day of December, 1922, apportioning the proceeds of the sales of unproductive real estate between principal and income.

*Bertrand L. Pettigrew* [*David B. Luckey* of counsel; *George W. Thomas* with him on the brief], for the appellant.

*Benjamin R. Buffett,* for the respondent Julia Watt Lawrence.

*Elkus, Gleason & Proskauer* [*Donald C. Strachan* of counsel; *Wesley S. Sawyer* with him on the brief], for the respondent Mechanics and Metals National Bank, as substituted trustee, etc.

*Charles P. Northrop,* for the respondents Keith W. Morris and another.

*Frederic H. McCoun,* for the respondent Louis H. Morris.

*Burt W. Whedon,* special guardian, for the respondents Louis H. Morris, Jr., and others.

Decree affirmed, with costs separately to all parties appearing by separate counsel upon this appeal, payable out of the principal of the trust fund, upon the opinion of John Godfrey Saxe, referee.

Present — CLARKE, P. J., DOWLING, FINCH, McAVOY and MARTIN, JJ.

The following is the opinion of the referee:

SAXE, Referee:

This is a special proceeding brought by Julia Watt Lawrence for the apportionment of three funds aggregating over $486,500, consisting of proceeds of sales of real estate, constituting part of the residuary estate of Mary G. Pinkney, deceased, and for a decree awarding to Mrs. Lawrence so much thereof as shall be found to be income belonging to her as beneficiary of certain trusts created by Miss Pinkney's will.

Mary G. Pinkney died on December 8, 1908. She divided her residuary estate into fourths and eighths, but because of the fact that one Archibald Watt predeceased her, the division became thirds and sixths. Thus, she gave one-third of her residuary estate to her executors, in trust, to pay over the income to Mrs. Lawrence during her life, and upon her death to distribute the principal among her descendants ("the Lawrence trust"). She gave one-sixth of her residuary estate to her executors, in trust, to pay over the income to Grace Watt Thomas during her life and, upon her death, in case she should die without issue, to distribute the principal one-half to Thomas L. Watt, or his representatives, and one-half to the trustee of the Lawrence trust ("the Thomas trust").

Mrs. Thomas died intestate and without issue on August 15, 1914, so that the Thomas trust terminated on that date.

Miss Pinkney left an estate consisting largely of unproductive real property. It was not possible for those charged with the administration of her estate to sell the whole or a substantial part thereof at or immediately after Miss Pinkney's death except at an undue sacrifice and they, therefore, postponed such sale. A large part thereof still remains unsold.

There has been considerable litigation under Miss Pinkney's will. The leading case is *Lawrence* v. *Littlefield* (215 N. Y. 561). In that case the Court of Appeals decided that Miss Pinkney intended that any proceeds of sales of this unproductive real estate, "thus and when realized," should be apportioned between income, payable from the time of Miss Pinkney's death to the life beneficiary, and principal, belonging to the remaindermen, and that she did not intend that such proceeds, "thus realized," should be treated wholly as principal with income payable thereon to the life beneficiary only from the date of actual conversion.

There has also been a proceeding to apportion and recover the proceeds of a series of sales of this unproductive real estate. That proceeding was referred to an unusually competent Referee, and his decision was duly affirmed by the Surrogates' Court and by the Appellate Division (201 App. Div. 837), and applications for leave to appeal to the Court of Appeals were denied.

The present proceeding before me is an application to apportion and recover the proceeds of a second series of sales made subsequent to the former referee's decision, to wit, to apportion proceeds of sales variously held by Clarence H. Kelsey, as administrator, with Miss Pinkney's will annexed, for the benefit of the Thomas trust, by the Lincoln Trust Company (now the Mechanics and Metals National Bank), as trustee under the Lawrence trust, and by the United States Mortgage and Trust Company, as trustee under the

Thomas trust. In other words, the former Referee duly made an apportionment between principal and income of the proceeds of the first series of sales; and the object of the present proceeding is to have me, as referee, make a similar apportionment of the proceeds of the second series of sales.

The parties stipulate that the rate of interest to be used as a basis of calculation should be the same as that before the former Referee, to wit, five per cent.

Needless to say, the former decisions, in so far as they decide any issue raised before me, are binding upon me and are *res judicata*.

Under Miss Pinkney's will, and because of Archibald Watt's death, the primary division of all sales was into thirds. There is then a second division as to the third receivable by Mrs. Thomas, one-half going to her representative outright, and the other half going to the trustee of the Thomas trust for her life, with remainders over. This would naturally lead to the assumption that I have before me a petition for the distribution of *one-sixth* of the proceeds of each sale; but, as a matter of fact, the petition relates to only one-twelfth of the proceeds of each fund. In other words, those charged with the administration of Miss Pinkney's estate have, since Mrs. Thomas' death, paid over one-half of one-sixth upon a private arrangement between the representatives of Thomas L. Watt and Mrs. Thomas' representative as to the proper division between principal and income. The result is that, in all calculations before me, I am to treat all Thomas funds as though Miss Pinkney had given such fund, in trust, for Mrs. Thomas, during her life, and then for Mrs. Lawrence during her life, with remainders over. I, of course, have no jurisdiction except to distribute the one-twelfth which has been brought before me, and no one before me questions the propriety of the distribution of the other one-twelfth by those charged with the administration of Miss Pinkney's will.

Towards the close of the reference before me, there remained only one question to be decided. Counsel for the remaindermen and for Mrs. Lawrence urged one method of apportionment of the funds held for Mrs. Thomas and Mrs. Lawrence. Counsel for Mrs. Thomas' representatives urged an alternative method of apportionment and also urged that the decision of the former Referee is *res judicata* upon the method of apportionment which they asserted he adopted. I have decided that the method urged by counsel for the remaindermen and for Mrs. Lawrence is correct. I have also held that the former Referee, whose figures were concededly supplied to him by counsel for Mrs. Lawrence, did not adopt either of the two methods of apportionment urged by counsel, and that the result of the figures which counsel supplied to him was to employ

both methods of calculation. For that reason I have held that his decision is not *res judicata* as to either method of calculation, but that, on the contrary, I concededly and obviously must adopt one or other of the two methods of apportionment so that the parties will have a definite rule for this case and also for all future sales. It is, therefore, of grave importance that this question be definitely settled for all time, if, indeed, it has not already been decided by the Court of Appeals in *Lawrence* v. *Littlefield.*

As above stated, I decided the question upon the reference; but it is so involved that I deem it my duty to write this opinion, so as to fully acquaint the court with the exact situation and enable the court to review my decision without resort to the voluminous documents in the case for its information as to facts, figures and calculations.

The apportionment of the funds held by the Lincoln Trust Company, as trustee under the Lawrence trust, presents no difficulty. These funds are held by it as trustee for the benefit of Mrs. Lawrence during her life, with remainders over. This is a single trust. The only dates to be considered are December 8, 1908, the date of Miss Pinkney's death, and the respective dates on which the proceeds of sales were received by the trustee. The rate is five per cent. The computation is merely to ascertain as to each receipt what sum, if put out at interest at five per cent on December 8, 1908, would amount on the date of such payment to the amount received by the trustee. These figures have been duly fixed by consent.

The controversial question arises as to the apportionment of the funds held for the Thomas trust. In this instance there are two succeeding trusts, one for the life of Mrs. Thomas, which expired upon her death on August 15, 1914, then a trust for the life of Mrs. Lawrence, with remainders over. As above stated, there are two different methods for making this computation, which will bring about radically different figures. The method of computation which I have adopted is to start with the various dates when each sum of proceeds of sales was received and to first determine, as of those dates, under the rule laid down by the Court of Appeals, what sum, if put out at interest at five per cent on December 8, 1908, would amount on the dates of such receipts to the amounts received by the trustee. This would fix the amount of the principal as of Miss Pinkney's death, as of Mrs. Thomas' death and of the date of the receipt of the cash — one principal and only one principal. The income may then be readily divided between Mrs. Thomas and Mrs. Lawrence, *pro rata*, by the number of days, *first*, between December 8, 1908, and August 15, 1914, and, *second*, between August 15, 1914, and the date of such receipt of cash.

The other method of calculation is to assume that which is not a fact, to wit, *that the money was received on August 15, 1914*, and to first ascertain as to each receipt what sum, if put out at interest at five per cent on December 8, 1908, would amount *on August 15, 1914*, to the amount received. This would fix one principal as of August 15, 1914, *and give all the balance to Mrs. Thomas as being income.* This calculation, however, would not be final because it would neither determine the amount of principal as of the date of the receipt of the payment, nor the Lawrence income. It would require a second calculation, to wit, to ascertain what sum, if put out at interest at five per cent on August 15, 1914, would amount, on the date the money was actually received by the trustee, to the amount of this " principal " No. 1. The amount so ascertained would be principal No. 2 as of the day of payment. The balance would be Lawrence income.

It has been urged before me that the method of calculation was determined by the former Referee and that his decision is *res judicata.* I have found against that claim. This particular question as to method of calculation, which has assumed first importance upon the present reference, was because of Mrs. Thomas' recent death, of comparatively small importance upon the last reference, and it has been frankly admitted by counsel for Mrs. Lawrence, without dispute, that he prepared the figures which were submitted to the learned Referee, and they were incorporated in his report without change. At that time these figures were not controversial and were not questioned by any one either before the surrogate or on appeal. As the late Mr. Justice Gaynor used frequently to say, they were " inadvertent." Furthermore, and more important, it conclusively appears that these figures do not embody either method of calculation which could be the basis of a plea of *res judicata.* The figures themselves demonstrate that the figures involved both methods of calculation and did not follow either the one or the other, so that I am absolutely constrained to disregard the former report in order to decide which one of the two intermingled calculations is correct.

This is important, so let me make it entirely clear. Take, for example, the first payment passed upon by the former Referee. This first appears in conclusion III of his report, at page 82, folio 244, of the printed record in the Appellate Division. It reads as follows:

" $1,000 (Received February 7, 1916); Principal (as of August 15, 1914), $736.14; income, $221.30."

Note, first, that if we add $736.14 and $221.30, the total is not $1,000, but $957.44! What has become of the balance?

Let us, in the first instance, calculate this $1,000 item under each of the two methods of calculation:

(a) Under the first method of calculation, starting with February 7, 1916, the date the trustee received this $1,000, the amount of principal would be *$736.14*, and the amount of income to be divided between the two beneficiaries would be the balance, amounting to $263.86. Between December 8, 1908, and August 15, 1914, there aie 2,076 days, and between August 15, 1914, and February 7, 1916, there are 541 days. The item $263.86 divided *pro rata*, by days, between Mrs. Thomas' representative and Mrs. Lawrence, amounts to $209.31 and $54.55 respectively.

(b) Then, taking the second method of calculation, by assuming a fiction that the $1,000 was received on August 15, 1914, instead of February 7, 1916, the amount of principal as of August 15, 1914, would be *not* $736.14, but $778.70 (a figure which had to be determined in this calculation, but which nowhere appears in the report of the former Referee), and the balance as of August 15, 1914, would be *$221.30*.

In other words, referring to conclusion III of the former Referee, the item $736.14 therein stated to be principal was obviously found by the first method of calculation, and the item $221.30 therein stated to be Thomas income was obviously found by the second method of calculation.

The same series of items are set forth in conclusion V at page 83 of the printed record (fol. 248), which reads as follows:

| Amount. | When paid over. | Principal. | Thomas interest. | Lawrence interest. |
|---|---|---|---|---|
| $1,000 | Feb. 7, 1916 | $736.14 | $221.30 | $42.56 |

Here, again, the item of principal was found by the first method and the item of the Thomas interest by the second method. How was the amount of the Lawrence interest found? A. By a wholly arbitrary subtraction. What was subtracted from what? A. Curiously enough, this item of *income*, $42.56, may be arrived at either by subtracting the *principal* of $736.14, as calculated under the first method, from the amount of a primaiy *principal*, $778.70, as calculated under the second method, or by subtracting the Thomas income of $221.30, as calculated under the second method, from the total income of $263.86, as calculated under the first method. This was obviously erroneous and all counsel so conceded on the reference before me; and the contention of counsel for Mrs. Thomas' representative was that it was *res judicata* only in so far as it was paitially correct and in his favor.

I have arrived at my conclusion, *first*, by a study of the decision of the Court of Appeals in *Lawrence* v. *Littlefield*, and, *second*,

by a close study of the question as to what method is the most just and equitable to all parties. Both considerations point inevitably to an identical result. The Court of Appeals was dealing with unproductive realty. There was no actual income. The question before the court was what should be done with the proceeds of sales " thus and when realized." The method of calculation which it laid down for the division of the proceeds of sales was one fixed primarily by the dates when proceeds were " thus and when realized." The principle of law which led the court to its decision was in the nature of a legal fiction. During the long period between Miss Pinkney's death and the dates when unproductive land was sold, there was only real estate — there was no actual income. The court held that Miss Pinkney's intent was that this unproductive real estate should be treated as undivided principal and income. Obviously, no calculation could be made until the proceeds were actually received, and also, obviously, as one would think, the primary calculation must be made as of the date when they were so received. If we disregard the actual figures contained in the former Referee's report and confine ourselves to his opinion, we find that he believed he was adopting the second method of calculation. Thus he says, in his opinion, at page 100 of the printed record, folio 298, " The land or its proceeds ceased, as to Mrs. Thomas, to represent income on the latter's death (August 15, 1914, the date of her own death); and it *seems* accurate, in her case, to *treat* the money *as though* received at the time of her own death." There is nothing in the opinion of the Court of Appeals which would indicate that it can be " accurate " to treat money received on February 7, 1916, as received on August 15, 1914. The necessary result would be to galvanize Mrs. Thomas' income out of any and all sales heretofore or hereafter made, for years to come, at the increasing expense to Mrs. Lawrence's income and to the remainder-men's principal. " Treating " cash received on later dates " as though " received on August 15, 1914, is superimposing upon a legal fiction that which is nothing more or less than an actual fiction.

In my opinion, when we have before us a particular sum of money received by a trustee at a certain date, we, both under the method of calculation laid down by the Court of Appeals and in fairness to the remaindermen and the other life beneficiary, must first determine, as of that date, what amount is principal and what amount is income. This calculation at once determines the principal for all time. It does not, as does the alternate method, create one principal as of one date and a second principal as of a second date.

As already pointed out, the former Referee actually adopted this method in part and first took the sum of $1,000 received on February 7, 1916, and determined, as of that date, what amount thereof was principal and what amount was income. The item $736.14, principal, set forth both in conclusion III and conclusion V, is an item of principal determined, not as of August 15, 1914, *but as of February 7, 1916.* To that extent the former Referee and I are in entire agreement, and counsel for Mrs. Thomas' representative, who urges the defense of *res judicata, must necessarily be in entire disagreement.* Now, if we have decided the principal for all time, the balance must be income, and, again, I use the term " obvious " when I hold that it is obvious that the only method in which one can fairly divide that income between two beneficiaries is to divide it *pro rata* according to dates when they would have received it. This follows the principle laid down by the Court of Appeals and it is the only equitable method of division.

The question is concededly a novel one. Counsel and I have industriously sought for precedents, but there are none. I accordingly tried to employ the most logical and the most just method, and I believe that in the method I have adopted there is no conflict between reason and law. They both demand the decision which I have made.

There were several other issues which arose during the reference, but they have all been adjusted, after argument, by consent.