In the Matter of the Judicial Settlement of the Account of SARAH WAINWRIGHT and BANK OF NEW YORK AND TRUST COMPANY, as Executors, etc., of STUYVESANT WAINWRIGHT, Deceased, for the Period from November 3, 1930, to February 8, 1935.*

In the Matter of the Application of SARAH WAINWRIGHT and BANK OF NEW YORK AND TRUST COMPANY, as Trustees under the Last Will and Testament of STUYVESANT WAINWRIGHT, Deceased.

STUYVESANT WAINWRIGHT (Formerly Known as STUYVESANT WAINWRIGHT, JR.) and Others, Remaindermen, and HUGO GRABS, Objectant-General Legatee, Appellants; SARAH WAIN-WRIGHT and BANK OF NEW YORK AND TRUST COMPANY, as Executors of and Trustees under the Last Will and Testament of STUYVESANT WAINWRIGHT, Deceased, and Others, Respondents.

Second Department, July 2, 1936.

* Modfg. and affg. 157 Misc. 531.

*Matthew M. Campbell*, for the appellants Stuyvesant Wainwright, John Howard Wainwright, Loudon Snowden Wainwright and Carroll Livingston Wainwright.

*Friend L. Tuttle*, for the appellant Hugo Grabs.

*Herbert Barry*, for the respondents, executors and trustees.

*Roger Sherman*, for the respondent Sarah Wainwright, individually and as life beneficiary.

*Arthur R. Wilcox*, special guardian for the seven infant respondents.

HAGARTY, J. The decedent, Stuyvesant Wainwright, was a resident of the village of Rye, and died on the 3d day of November, 1930, leaving a last will and testament made on the 12th day of March, 1928, and a codicil thereto made on the 21st day of June, 1930, both of which have been duly admitted to probate.

This proceeding was commenced on or about the 27th day of May, 1935, for the judicial settlement of the accounts of the executors and trustees in the former capacity from the date of death to the 8th day of February, 1935. The will and codicil make to the testator's wife, a respondent here, specific gifts of wearing apparel, jewelry, furniture, etc., and of a life estate in premises known as "Sailor's Snug Harbor." There is one general bequest to appellant Hugo Grabs in the sum of $15,000. The fourth paragraph of the will sets up a trust of the residuary for the benefit of the widow for life with remainder over in equal shares to the decedent's four sons, who are appellants here. The testator's individual estate, as distinguished from the assets belonging to his mother's estate, over which he had a power of appointment of the remainder of a share of which he was life beneficiary, and hereinafter called the "appointive estate," consisted of personalty in the sum of $243,880 and realty in the sum of $183,285. Although the amount of mortgages with which the realty is incumbered is not set forth

it would appear from the yearly interest of $4,020 that they aggregated approximately $70,000, leaving the net value of the realty in the sum of approximately $113,000, and the value of the total estate in the sum of approximately $357,000. The appointive estate which passed under this will consisted of realty in the sum of $97,752.11 and personalty in the sum of $83,896.70, thus amounting in the aggregate to the sum of $181,648.81.

Despite this very substantial estate, and the fact that its bulk comprises the residuary trust in question here, the income therefrom has been meager. The income from the individual estate, during the period of the accounting, has been but $30,584.89, and most of this has been used for the upkeep of the realty, the widow having received therefrom but $3,690.50. The income from the appointive estate for the year 1935 appears to be $2,594.06, and from the time a decree was made on the 11th day of January, 1934, settling the accounts of the trustees under the will of the decedent's mother, Margaret S. Wainwright, deceased, the widow here has received $2,918. A substantial part of the realty of the individual estate consists of vacant land, and it seems that only five of nineteen parcels, excluding the one as to which the widow has a life interest, are income producing, the gross rents amounting to $5,245 in 1934. But, in addition to the trust fund, it appears that prior to the execution of his codicil the decedent gave his wife realty of the value of $70,500 and an $80,000 mortgage. As to this, the widow avers that in 1934 she received no income from the realty and approximately $3,600 from the mortgage, which is said to be in default for non-payment of taxes.

The main issue here, in so far as concerns the appeal of the remaindermen, is the familiar but vexatious one as to whether the burden of the carrying charges shall be borne by the corpus of the trust or paid from the income. Although we are appreciative of the latitude of the bounds of construction which may be invoked to vary the general rule as to payment from income on behalf of a life beneficiary who is plainly the primary object of the testator's bounty (*Lawrence* v. *Littlefield*, 215 N. Y. 561; *Spencer* v. *Spencer*, 219 id. 459; 220 id. 654; *Matter of Jackson*, 258 id. 281), the intention of the testator must govern. (*Matter of Satterwhite*, 262 N. Y. 339, 343; *Matter of Rowland*, 155 Misc. 826; affd., 248 App. Div. 627.) Here, the testator settles the question in plain and unequivocal language in creating the trust, viz.:

"*Fourthly:* All the rest and residue of my property, both real and personal, or the proceeds of sale thereof, remaining after satisfying the preceding provisions of this my Will, or such of them as shall become operative, I give, devise and bequeath unto my

Executors hereinafter named, or such of them as shall qualify and the survivor or successors of them, in trust, nevertheless, to receive the rents, interest and income thereof, and *after paying thereout all taxes, commissions, premiums of insurance and necessary expenses for repairs or otherwise, to pay over the net rents, interest and income unto my said wife, Sarah Wainwright, for and during the term of her natural life,* and on the death of my said wife, I direct that such trust shall cease, and I thereupon direct my said Executors to divide all the said rest and residue of my property, both real and personal, or the proceeds of sale thereof, into as many equal parts or shares as shall represent the number of my four sons."

The learned surrogate has held that the testator effected an equitable conversion of his realty into personalty and that the above-quoted provision with respect to payment of taxes, etc., prior to turning over the "net rents, interest and income" to the life beneficiary, was simply a direction intended to take place from the date of death until the time when the conversion could actually be consummated, ordinarily fixed as a period of one year, and so his decree provides that after the first year the carrying charges are not properly chargeable against the income but are properly chargeable against the principal of the individual estate. The basis for this holding is a power of sale contained in the will, construed as mandatory, which, as the learned surrogate points out, contains no express statement that the executors are endowed with discretion. But, on the other hand, there is no direction to sell. The executors simply are authorized and empowered so to do. This is an ordinary power of sale and not a mandatory one. In addition, the above-quoted trust provision clearly comprehends that the remainder shall consist of realty as well as personalty. We are of opinion, after due consideration of the language of the will and the income received by the widow as well as the previous gifts to her during the lifetime of the testator, that it was the plain intention of the testator that carrying charges be met from income and not from the corpus of the trust fund.

The remaindermen-appellants also appeal from that part of the decree which fixes the period of one year within which the executors and trustees are empowered to dispose of non-legal investments. The affected provision reads: "Ordered, adjudged and decreed that, in view of continued depressed market conditions, the petitioners, as Executors and as Trustees, respectively, are entitled to a further reasonable time, to wit, a year at least from the date of this decree, within which to effect sales, respectively, of such investments of which the testator died the owner as are not legal for Executors, and of such investments in the appointed trust as are

not legal investments for Trustees; and that at the conclusion of said year application may be renewed, either at the foot of this decree or otherwise, for directions as to this question."

Thus the yearly provision is little more than a suggestion, and application may be renewed at the close of the year. The contention of the appellants is that the executors and trustees should not be limited by time in their disposition of these investments. But the executors and trustees themselves do not complain, and we are of opinion that the provision is sufficiently elastic to enable them to procure further time upon a showing that it is essential.

To summarize our conclusions with respect to this appeal, the decree should be modified by striking out the provisions that the testator by his will effected at his death an equitable conversion of the realty; that after the period of one year the carrying charges are chargeable against the principal of his individual estate; and for use of income to meet carrying charges with allocation thereof as additional sales are effected. Instead, the decree should contain a provision that the will does not effect an equitable conversion of the realty and that carrying charges are properly payable out of the income from the trust fund.

The main question presented by appellant Hugo Grabs is whether or not the property of the appointive estate shall be charged with the payment of his legacy. In view of the size of this estate, it would seem that this question should be of academic interest only. Nevertheless, this legatee has succeeded in obtaining only ten per cent of his legacy during the five-year period which has intervened since the testator's death.

Under the will of the testator's mother, the unrestricted testamentary power of disposition of the remainder of the estate of which he was life beneficiary was given to the testator in this language: " and on his death to convey, transfer and pay over such part or share, in absolute ownership, unto such person or persons * * * and in such amounts or proportions as such son by his last will * * * shall give, limit and appoint the same; * * * and I give, devise and bequeath the same accordingly."

The surrogate has held that the appointive estate is separate and apart from the individual estate and passes directly from the trustees under the mother's will to the trustees under the decedent's will. Doubtless, this holding would have been correct if the will did not contain any expression showing a comprehension by the testator that the appointive estate was to pass under his will other than the general language of the residuary clause so that it would be necessary to invoke the statutes to effect the exercise of the power of appointment by operation of law under the residuary clause.

(Pers. Prop. Law, § 18; Real Prop. Law, § 176; *Lockwood* v. *Milde-berger*, 159 N. Y. 181; *Hirsch* v. *Bucki*, 162 App. Div. 659.) But at the outset of his will, the testator makes this unusual statement of intention: " I, Stuyvesant Wainwright, of Rye in the County of Westchester and State of New York, do make this my last Will and Testament, intending hereby to dispose of all the property of which I may have the right or power to dispose at the time of my death."

With this intention thus stated at the outset, the testator proceeds to direct payment of his debts, to bequeath specific legacies, to give $15,000 to appellant Grabs, and then to devote the remainder to the trust fund. We are of opinion that there is here at the outset of the will an express statement or exercise of the power of appointment to the effect that the appointive estate is merged with the individual estate in carrying out the dispositive provisions thereof. The residue consists of the remainder of both estates " after satisfying the preceding provisions of this my Will."

In *Low* v. *Bankers Trust Co.* (270 N. Y. 143) exercise of a power of appointment passed under the residuary clause as a matter of law, but entailed a violation of the statutory rule against suspension of ownership by reason of life estates set up in the previous will and in the one then under consideration. In reversing a direction permitting the appointive estate to be used in paying costs and expenses so as to leave the individual estate, *pro tanto*, available for trust purposes, the Court of Appeals distinguished the holding in *Fargo* v. *Squiers* (154 N. Y. 250). Chief Judge CRANE pointed out that in the *Fargo* case the testator specifically referred to the power of appointment given her by the will of her father, showing that it was clearly in her mind to make that part of her residuary estate chargeable with certain expenses, whereas the will under consideration contained no suggestion or intimation that the testator had a power of appointment. The distinction is applicable here, in that the present will is not silent, but in our opinion expressly exercises the power of appointment so as to charge all of the dispositions upon the appointive estate.

Respondents further contend that, in any event, the issue is *res judicata*, as a decree was entered on the 11th day of January, 1934, settling the accounts of the trustees under the will of Margaret S. Wainwright, deceased, and the appointive estate was directed to be paid to the trustees under the will of the testator here as distinguished from their capacity as executors. The appellant Grabs, however, was not cited in that proceeding and, therefore, the decree was not binding upon him. (Surr. Ct. Act, §§ 257, 262.)

We do agree with respondent Sarah Wainwright, however, that in view of our holding that an equitable conversion did not take place, the general legacy, in accordance with well-settled principles, should be held to constitute a charge upon the personalty and not on the real estate of the individual estate, although it does constitute a charge upon all of the appointive estate in accordance with the intention of the testator in that respect.

The decree should contain a provision that the payment of this general legacy should be made as expeditiously as is practicable.

To summarize our conclusions with respect to this appeal, the decree should be modified by incorporating therein a provision that the corpus of the appointive trust is charged with the payment of the $15,000 legacy and that the personalty, but not the realty, of the individual estate is also charged therewith and the executors and trustees should be directed to make payment therefrom to appellant Grabs as expeditiously as is practicable. Provisions inconsistent therewith should be struck from the decree.

The decree of the Surrogate's Court of Westchester county should be modified accordingly, with costs, payable out of the estate, to all parties appearing and filing briefs, and the proceeding remitted to the Surrogate's Court to proceed in accordance with this opinion.

Present — LAZANSKY, P. J., YOUNG, HAGARTY, JOHNSTON and ADEL, JJ.

Decree of the Surrogate's Court of Westchester county modified by incorporating therein a provision that the corpus of the "appointive trust" be charged with the payment of the $15,000 legacy; that the personalty, but not the realty, of the individual estate is also charged therewith; that the executors and trustees be directed to make payment to appellant Grabs as expeditiously as may be practicable, and that provisions inconsistent herewith be struck from the decree. As so modified, the decree is unanimously affirmed, with costs, payable out of the estate, to all parties appearing and filing briefs, and the matter remitted to the Surrogate's Court to proceed accordingly.