In the Matter of the Petition of DANIEL UNDERHILL to Render and Settle His Account as Trustee under the Last Will and Testament of ALETTA R. LOTT, Deceased.

JAMES SCHENCK LOTT, Appellant; DANIEL UNDERHILL, as Trustee under the Last Will and Testament of ALETTA R. LOTT, Deceased, GRACE S. STREITZ, and LILLIAN LOTT, Individually and as Administratrix, etc., of JOHN I. LOTT, Deceased, Respondents.

Second Department, May 28, 1937.

*John S. Russell* [*Richard P. Charles* with him on the brief], for the appellant.

*James K. Foster,* for the respondent trustee.

*Albert Firman,* for the respondent Grace S. Streitz.

*Harry J. McDermott,* for the respondent Lillian Lott, as administratrix.

DAVIS, J.   The will of Aletta R. Lott, duly probated September 9, 1914, among other things, created a trust from the residuary estate, the net income of which was to be paid to her only son, James, during his life, with the remainder over to his children.   About forty per cent of the assets of the estate was unproductive real estate which had been owned by the testatrix for twenty years. There was power given to the executor and trustee to sell the whole or any part of the real estate " in such manner and upon such terms as he   *   *   *   may deem best for the interests of my estate," with the proceeds of such sales to be held under the trust. He was given specific directions as to investment.

A part of the property was sold or otherwise disposed of more than eleven years after the will had been probated and at a price greatly in excess of the inventory value.   During these years the taxes on the property were charged to income.   The life beneficiary now seeks apportionment of taxes between principal and income and, likewise, such apportionment in respect to the increment in value. The facts are stipulated.

The general rule is that the life estate is chargeable with taxes and current expenses so that the capital of the trust or remainder may pass unimpaired when the trust or life estate terminates.

(*Matter of Albertson*, 113 N. Y. 434; *Woodward* v. *James*, 115 id. 346.) In later years a more liberal rule has prevailed in construing the intent of a testator where a considerable part of the trust estate consists of unproductive real property and the beneficiary entitled to the income is one in close relationship to the testator and was the natural object of his bounty. Particularly is that rule applied where the testator must have known that without such construction the beneficiary would be left without adequate support, if taxes and carrying charges were to be paid from income. When the relation was that of wife or daughter or one in similar close relationship, it is held that the burden should be lifted and there should be apportionment not only of charges but also of increment in value of the real property when a sale is delayed. To that end it will be held that a power of sale will be considered imperative and mandatory, that equitable conversion may occur, unless the language used shows a clear intent to the contrary. (*Lawrence* v. *Littlefield*, 215 N. Y. 561; *Spencer* v. *Spencer*, 219 id. 459; *Furniss* v. *Cruikshank*, 230 id. 495; *Matter of Jackson*, 258 id. 281; *Matter of Satterwhite*, 262 id. 339; *Matter of Chapal*, 269 id. 464; *Matter of Rowland*, 273 id. 100; *Matter of Wainwright*, 248 App. Div. 336.)

It is largely a question of judgment in applying the rule to a given state of facts, taking into consideration the language used in the will, when the courts seek to ascribe a certain intent to a person now dead. On such subjects judicial minds reach different conclusions, as is illustrated in the varying determinations reached by appellate courts and in the dissents in some of the cases cited, as well as in this case. There can be no certainty that the result is correct. At best it is an attempt to do justice between conflicting interests. (*Matter of Barney*, 207 App. Div. 25; affd., 239 N. Y. 584.)

In this case the son had reached the age of fifty years when the mother's will was executed. He apparently had no vocation, was possessed of no property, and he and his unmarried children lived in the home of the testatrix and were supported by her. There were bequests of $500 each to three of the granddaughters, but none to the grandson. They were not to share in her estate until after their father's death. One of the grandchildren was married at this time, and all have since married. Two have died, without issue.

To the son were devised outright the home, worth $14,800, and another small house that produced annual rentals of $150. The trust estate was valued at $43,500.52 (including the unproductive real property). The average net income therefrom, until the real property was sold or taken by condemnation proceedings, was less than $1,000 per year. It would have been somewhat larger if the

unproductive real property had been sold shortly after the trust estate had been set up; but the remaindermen were benefited by the delay. So in a measure has the son been benefited, for his present income has been more than doubled. However, as he is now seventy-five years of age, these benefits cannot be long enduring.

A majority of the court believe that the son was the principal object of the bounty of testatrix; and that his welfare was her chief concern. In our view, the language of the will and the surrounding circumstances lead to that conclusion. She directed that, after the payment of bequests, the residue of her estate, both real and personal, be invested in securities to constitute the trust estate. While there was apparent discretion vested in the trustee to sell the unproductive real estate, we think that by implication such discretion was limited to the terms of the sale and a reasonable time after the trust was created. As already stated, the delay in selling was highly profitable to the trust estate, but at an expense to the beneficiary in the meantime. Under the doctrine of equitable conversion, the beneficiary should now share in the increment " for the period of abstinence." (*Furniss* v. *Cruikshank, supra*, p. 510.)

The decree, in so far as an appeal is taken therefrom, should be reversed on the law, with costs to all parties filing briefs, payable out of the estate, and the matter remitted to the Surrogate's Court to make apportionment. The rules respecting apportionment in *Furniss* v. *Cruikshank* (*supra*); *Matter of Marshall* (43 Misc. 238), and Restatement of the Law of Trusts, American Law Institute (§ 241), should be applied in making such apportionment.

ADEL and CLOSE, JJ., concur; HAGARTY and JOHNSTON, JJ., dissent and vote to affirm.

Decree of the Surrogate's Court of Kings county, in so far as an appeal is taken therefrom, reversed on the law, with costs, payable out of the estate, to all parties filing briefs, and the matter remitted to the Surrogate's Court to make apportionment.