## In the Matter of the Estate of EDGAR F. PRICE, Deceased.

Surrogate's Court, Westchester County, July 26, 1937.

*Ashley T. Cole* [*Albert J. Snook* of counsel], for the petitioner, Ida Owen Price, as executrix, etc.

*Larkin, Rathbone & Perry,* for the Central Hanover Bank and Trust Company.

*William F. Bleakley,* special guardian.

SHEILS, S. The petitioner, the widow of this testator, has requested a decree construing said will and judicially determining:

(a) Whether the maintenance charges and taxes for the upkeep of the real property of which decedent died seized should be charged against the principal of the estate rather than against the income thereof; and

(b) Whether the trustee, in renouncing the amount of compensation offered by the testator in his will and accepting the statutory commissions allowed by law, is, nevertheless, bound by the direction of the testator to the effect that all compensation of the trustee should be deducted from the income of the trust estate rather than from the principal thereof.

The decedent, a resident of the town of Rye, died April 15, 1935. He was survived by his widow, Ida Owen Price (this petitioner), an adult son, Edgar Kenan Price, an adult son, James Owen Price, an adult daughter, Mary Lyle Price, and an infant grandson, John Kenan Price, the latter being the son of Edgar Kenan Price. The last will and testament of decedent, dated October 31, 1928, and a codicil thereto dated September 27, 1934, were admitted to probate on April 29, 1935, and 'letters testamentary issued to this petitioner. The decedent died seized and possessed of real property consisting of approximately 226 acres in the town of Rye and approximately 34 acres in the town of Harrison, appraised in the estate tax proceedings at $731,995, and personal property of the inventory value of $2,662,862.44.

The will, after making an outright bequest of all his personal, household and farm goods and effects to his wife and cash legacies to certain employees, gives the residue of his estate to the Central Union Trust Company of New York (now the Central Hanover Bank and Trust Company) as trustee, to hold and manage upon certain express trusts for the benefit of his widow and his three children, with remainders over.

Regarding the question of whether the maintenance charges and taxes for the upkeep of the real property of which the decedent died seized should be charged against the principal of the estate, rather than the income thereof, the pertinent provisions of the will are as follows:

"*Fourth.* I hereby authorize, empower and direct my Trustee to permit my said wife, if she survive me, to occupy for her own use without rent or other payment and without impeachment of waste, my said residence and farm properties, or such part thereof, *and for such length of time during her lifetime, as my said wife may elect so to occupy the same;* but my said wife shall pay all costs of maintenance, repairs, insurance, taxes and other like charges of and against my said residence and farm properties, or of and against such part of the same as she elects to so occupy, *during the period of such occupancy.* (Italics mine.)

"*Fifth.* It is my wish that all the real property owned by me at the time of my death should be sold within a reasonable time after my death and I hereby authorize, empower and direct my Trustee to sell at its discretion,

but in each instance only with the consent or direction in writing, (a) of my said wife during her lifetime; (b) after her death, of the person entitled hereunder to receive at the time the net cash income from said respective Trust Funds (*provided* such person shall have then attained the age of twenty-five (25) years), as to all property

constituting any part of said respective Trust Funds; *or* (c) of any one of my following friends: William R. Kenan of the City of Lockport, in the State of New York, John Motley Morehead of the Village of Rye, in the State of New York, Jesse J. Ricks of the Village of Plandome, Long Island, in the State of New York, and Edward S. Whitney of the Town of Montclair, in the State of New Jersey, (if any of them be living at the time) at all times, and as to all matters, not otherwise provided for by said preceding items (a) and (b) (each person who is so hereinbefore authorized to give for the time being such consent or direction in writing as to the matter then in question, being hereinafter referred to as the ' adviser '),

in parcels or as a whole, for cash and/or upon credit, and upon such terms and conditions as my Trustee may determine, all the real property owned by me at the time of my death, as follows:

" (a) All said real estate *except* such part or all of my said residence and farm properties as my said wife may elect so to occupy, as soon after my death as the same can be sold in the opinion of my Trustee without prejudice or undue loss to my Trust Estate and/or the respective Trust Funds hereinafter provided for (as the case may be).

" (b) Such part or all of my said residence and farm properties as my said wife may elect so to occupy, as soon as the same can be sold in the opinion of my Trustee without prejudice or undue loss to my Trust Estate and/or the respective Trust Funds hereinafter provided for (as the case may be), *after either the death of my said wife or her earlier election not so to occupy the same or her earlier election to discontinue such occupancy of the same.* (Italics mine.)

" *Sixth.* I hereby authorize, empower and direct my Trustee, as soon as conveniently can be done after my death, to divide my Trust Estate (including my said residence and farm properties — but subject to such right of occupancy of my said wife if she survive me — and dividing my said real estate, if my Trustee in its discretion sees fit so to do, into six (6) equal undivided beneficial tenancies in common) into six (6) as nearly equal shares as practicable, which said six (6) respective shares, with all property from time to time added to and/or substituted for said six (6) respective shares and/or any part of the same, shall be designated and are hereinafter referred to as ' Trust Fund A,' ' Trust Fund B,' ' Trust Fund C,' ' Trust Fund D,' ' Trust Fund E ' and ' Trust Fund F,' respectively."

The evidence is that, on October 18, 1935, the widow, by written notice to the trustee, renounced and surrendered her right to occupy the residence and farm property of the decedent; that said property

was unproductive in the sense that the maintenance charges and taxes for a period antedating the making of decedent's will, *i. e.,* October 31, 1928, to October 18, 1935, when the widow surrendered her right to occupy the property, were far in excess of the income therefrom; that the income from said real property, the expenses of maintenance thereof, including taxes, and the resulting deficits from 1926 to January 1, 1936, were as follows:

| Year | Expenses | Receipts | Deficit |
|------|----------|----------|---------|
| 1926 | $115,569 41 | $19,151 25 | $98,418 16 |
| 1927 | 96,633 49 | 9,693 00 | 86,940 49 |
| 1928 | 99,793 77 | 18,631 80 | 81,161 97 |
| 1929 | 90,882 50 | 16,129 83 | 74,752 67 |
| 1930 | 90,738 77 | 14,731 25 | 76,007 52 |
| 1931 | 93,243 46 | 16,069 75 | 77,173 71 |
| 1932 | 82,141 77 | 12,194 00 | 69,947 77 |
| 1933 | 75,242 37 | 11,192 32 | 64,050 05 |
| 1934 | 96,257 79 | 7,853 26 | 88,404 53 |
| 1935 | 53,472 49 | 1,911 50 | 51,560 99 |

The total gross income received by the widow for the year 1936 was $38,000. It will be seen, therefore, that if she is compelled to meet the carrying charges of the real property out of her income, the latter will be an amount insufficient for her proper support and maintenance, and this seems not to have been the intention of the testator.

In *Spencer* v. *Spencer* (219 N. Y. 459, at p. 465) the court said: "The general rule undoubtedly is that taxes and carrying charges on real estate held by trustees for a life beneficiary are to be paid out of the income of the trust estate, and are not properly chargeable to capital account, unless the will of the testator contains unequivocable directions to the contrary. The authorities establishing this proposition are numerous. The following cases illustrate the rule, perhaps as well as any others: *Matter of Albertson* (113 N. Y. 434); *Woodward* v. *James* (115 N. Y. 346); *Clarke* v. *Clarke* (145 N. Y. 476). There is, however, no doubt that this rule of construction which requires the payment of taxes and carrying charges out of income yields when opposed to the plain intention of the testator. (*Lawrence* v. *Littlefield,* 215 N. Y. 561; *Matter of Pitney,* 113 App. Div. 845; affd., 186 N. Y. 540; *Sheffield* v. *Cooke,* 98 Atl. Rep. 161.)"

In *Matter of Jackson* (258 N. Y. 281, at pp. 287, 288) the court said:

"If the will does not express the intention of the testator in so many words, the court will give a fair and reasonable construction

to the words which he uses to effectuate his intention.  *  *  *
The general rule is that the capital of a trust fund should not be
impaired by carrying charges unless the intent of the donor may
clearly be inferred. (*Matter of Albertson*, 113 N. Y. 434.) This
follows from the usual purpose of the testator to give the beneficiary
the net income and to preserve the corpus intact until the termina-
tion of the trust. The reasonableness of the rule as applied to
productive property permits no question.

" In cases of unproductive lands held in trust, apportionments
have been made between income and principal of the purchase price
when such lands are sold. (*Lawrence* v. *Littlefield, supra; Spencer*
v. *Spencer*, 219 N. Y. 459; *Furniss* v. *Cruikshank*, 230 N. Y. 495.)
These cases rest on the assumption that the testator did not intend
to impoverish or hamper the life tenant with carrying charges for
the benefit of the residuary estate."

The assertion in *Matter of Albertson* (113 N. Y. 434) that
" unequivocal direction " to the contrary alone shall justify an
exception to the rule, must yield to the intent of the testator.
(*Matter of Jackson, supra; Matter of Chapal*, 161 Misc. 67; modfd.,
245 App. Div. 818; revd. and surrogate affd., 269 N. Y. 464; *Matter
of Satterwhite*, 262 id. 339; *Matter of Rowland*, 273 id. 100, 106;
*Matter of Wainwright*, 248 App. Div. 336, 339.)

It is my opinion, upon reading the will, that the testator did not
intend his wife, the principal object of his bounty, to bear the cost
of the maintenance of his real property unless she *elected to occupy
the same*, and, in that event, only " *during the period of such occu-
pancy.*" (Paragraphs fourth and fifth of the will.) This intention
is further demonstrated by the provisions of paragraph thirty-
first of the will, which reads as follows:

" *Thirty-first.* Any inheritance, transfer and /or other taxes that
my Trustee may be required to pay, provide for, or retain under
any present or future law of any State or of the United States or
of any Governmental authority having the taxing power, by reason
of its being trustee hereunder, with respect to my Trust Estate
and /or to said respective Trust Funds and /or upon my Trust
Estate and /or said respective Trust Funds, *excepting* income taxes
but *not excepting* profits taxes on sales of securities, shall be paid,
provided for, or retained (as the case may be) by my Trustee from
and out of the principal of my Trust Estate and /or said respective
Trust Funds and not out of the income therefrom, and for such
purpose my Trustee may sell in its absolute and uncontrolled
discretion any of the securities of my Trust Estate and /or of said
respective Trust Funds."

It is, therefore, determined that, from and after October 18, 1935, when the widow surrendered her right to occupy the real property owned by the decedent, the maintenance charges and taxes for the upkeep of the real property owned by the decedent should be charged to the principal of the estate rather than to income.

The second and remaining question to be decided is whether the trustee, by renouncing the amount of compensation offered by the decedent in his will and accepting, in lieu thereof, the statutory commissions allowed by law, is, nevertheless, bound by the direction of the testator to the effect that all compensation to the trustee should be deducted from the income of the trust estate rather than from the principal thereof.

Paragraph twenty-ninth of the will provides as follows:

" *Twenty-ninth*. My Trustee shall have the right and power to employ legal counsel in the administration or execution of any of the trusts hereof with respect to my Trust Estate and/or said respective Trust Funds, and to pay the reasonable compensation thereof, and such reasonable compensation together with all other reasonable costs, expenses and charges of my Trustee incurred by it in the execution or administration of the trusts hereof with respect to my Trust Estate and/or said respective Trust Funds, together with compensation to my Trustee payable hereunder with respect to said respective Trust Funds, shall be deducted and paid by and to my Trustee out of the income of said respective Trust Funds as hereinbefore provided, and if said respective income shall not be sufficient to satisfy such respective reasonable compensation, charges and/or expenses, my Trustee shall have a first lien for the same upon the principal of said respective Trust Funds. The compensation to my Trustee for accepting and executing the respective trusts hereby created with respect to my Trust Estate and said respective Trust Funds and for distributing said respective Trust Funds upon the termination of said respective trusts shall be one per cent (1%) upon the income disbursed annually from said respective Trust Funds and no other and further compensation for the receiving and paying out or distributing of the principal of my Trust Estate and/or of said respective Trust Funds or for any other services rendered hereunder shall be paid to my Trustee hereunder."

As to this question, I am of the opinion and decide that the trustee's commissions for receiving and paying income should be deducted from income and the commissions for receiving and paying principal should be deducted from principal. (Surr. Ct. Act, § 285.)

Submit decree in accordance herewith.