In the Matter of the Estate of NEILSON WINTHROP, Deceased.

Surrogate's Court, New York County, June 6, 1938.

*Mitchell, Taylor, Capron & Marsh* [*Charles Angulo* and *Ferdinand J. Wolf* of counsel], for the trustee, petitioner.

*Morris & McVeigh* [*Charles S. McVeigh* and *John A. Lyon* of counsel], for the life beneficiaries.

*Victor R. Kaufmann*, special guardian.

DELEHANTY, S. Between 1932, when deceased executed his will, and March 4, 1936, when he died, deceased had transferred his real estate holdings to a corporation known as Winthrop Properties, Inc., in exchange for stock and bonds of that corporation. His interest in the corporation was a minority interest. The bonds, which have a nominal value of $390,000, are listed in the account at a value of $199,000. Another capital asset listed is a note of the same corporation in favor of deceased for the sum of $11,000.

Certain shares of this corporation are listed as a capital asset and are said to be without value. Aside from these securities aggregating a reported value of $210,000 there is in the principal account only $51,000 in cash and liquid securities.

The scheme of the will provides for division of the residuary estate into two trusts and for the holding of a trust principal respectively for the benefit of the two surviving sons of deceased. One of such sons has a son and the latter is presumptively the remainderman of both trusts. Both of deceased's sons are married. Neither has ever been employed. Both are fifty-eight years of age and probably are past the earning stage. They are said to be without resources. The total income from the estate since the date of death is slightly over $3,000. The sons have received from the estate only $1,000 each.

The parties (including the special guardian for the infant presumptive remainderman) seek approval by this court of a plan whereunder some of the liquid assets in the principal of the trusts about to be set up would be sold and the proceeds thereof applied in monthly installments for the support of the life tenants over the next five years. The theory advanced in support of this plan is that the bonds of Winthrop Properties, Inc., which as stated in the account constitute the major capital value in the trust, are unproductive at the present time and that on the ultimate sale of them there must be an apportionment between principal and income. The trustee asserts that a present sale of such bonds would be a sacrifice of the intrinsic value in them. It asserts that within the five years which the plan contemplates the bonds could be sold for a substantial sum. The hardships which confront the sons of the testator are urged as a reason why the court should approve the plan. The special guardian concurs for the stated reason that his ward is solely dependent upon the ward's father for support and will be in dire need unless the father receives something out of the trust. The life tenants naturally seek approval of the plan. It is argued that the discretionary power of sale contained in the text of the will, the needs of these life tenants, the lack of any substantial income in the trust and the fact that the sons of deceased are obviously the special object of his bounty all warrant the application now of the doctrine of equitable conversion and of the principle of apportionment. In effect the parties are asking that the court now hold that this course must ultimately be pursued and they ask the court prospectively to act in anticipation of an actual sale to be made in the future. *They seek authority to pay this prospectively apportioned income out of capital assets other than those on which the supposedly accruing income is to be earned.* In

support of the proposal they cite the familiar cases on apportionment: *Matter of Rowland* (273 N. Y. 100); *Matter of Lott* (251 App. Div. 333); *Matter of Satterwhite* (262 N. Y. 339); *Matter of Jackson* (258 id. 281); *Furniss* v. *Cruikshank* (230 id. 495); *Spencer* v. *Spencer* (219 N. Y. 459); *Lawrence* v. *Littlefield* (215 id. 561); *Matter of Clarke* (166 Misc. 807).

None of the cases cited support the plan here proposed to the court. The court cannot say as a fact that any of the property in the estate is unproductive within the meaning of the authorities. Though the bonds to which reference is made are not now paying any interest the court has no means of knowing whether such bonds will not at some future date pay both principal and interest in full. Nor can the court know in advance that they will not become wholly worthless. It would introduce an unprecedented and dangerous element into the administration of estates if liquid assets could be devoted to income payments because other capital assets do not pay interest currently. No case cited to the court has presented any such state of facts.

Argument is made that the administration of the corporation Winthrop Properties, Inc., devotes income from earning parcels owned by it to the carrying of unproductive parcels and to the setting up of a reserve. Argument is made that if the testator at his death had owned individually the parcels which he transferred to the corporation there would be no question but that the court could apportion the unproductive property. The argument must fall because it is based on a non-existent situation. Deceased may not have sufficiently considered the effect upon the terms of his will of the transfer out of his personal ownership of the realty which went into the corporation but that is a consideration upon which the court may not speculate. Apportionment of the proceeds of the unproductive property would be made only when the property itself had been sold even in the assumed case of ownership by deceased individually. *There is no warrant for apportionment until there are proceeds to be apportioned.* On this point see section 240 of the Restatement of the Law of Trusts. Subdivision (e) of the section says: " The trustee cannot properly, instead of selling the unproductive property, make up the deficiency in income out of the principal of other property which he holds in trust."

The ingenuity of beneficiaries of testamentary trusts in seeking ways for circumventing the terms of the trust has always been held unavailing by the courts. The party to the instrument creating the trust whose wishes are controlling is the deceased himself. He never can consent. His directions — if not contravening the public policy of the State — must be followed.

Neither total nor partial destruction of a testamentary trust is permissible. (*Matter of Wentworth*, 230 N. Y. 176; *Matter of Eggers*, 167 Misc. 66.) The court is not without sympathy for the life tenants but is powerless to alter the testamentary scheme.

There is no need presently to make any ruling respecting the rights of the parties on an eventual sale of any non-earning assets. All such questions will be reserved until the need for a ruling arises and the actual facts are before the court. (*Matter of Mount*, 185 N. Y. 162.)

The court is of opinion that the will as a whole grants a power of investment in non-legal securities which inures to the trustee as well as to the executor. While the text if literally read might limit that right of investment to the executors and to the period antecedent to the setting up of the trust, the court believes that the spirit of the will requires the broader interpretation which is here given.

Submit, on notice, decree settling the account and construing the will in accordance with this decision.